UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WAYNE WILSON,<br><br>Plaintiff,<br><br>v.<br><br>LURA MERRITT, et al.,<br><br>Defendants. | Case No.: 1:22-cv-00455-JLT-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FOLLOWING SCREENING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>(Doc. 32) |

Plaintiff David Wayne Wilson is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action brought pursuant to 42 U.S.C. § 1983.

**I.    RELEVANT PROCEDURAL BACKGROUND**

Plaintiff filed his original complaint on April 18, 2022. (Doc. 1.)

On December 2, 2022, District Judge Anthony W. Ishii issued an Order Adopting Findings and Recommendations to Deny Plaintiff's Motion for Temporary and Injunctive Relief. (Doc. 23.)

On March 29, 2023, Judge Ishii issued an Order Adopting Findings and Recommendations to Deny Motion for Class Certification. (Doc. 27.)

On April 4, 2023, this Court issued its First Screening Order. (Doc. 28.) Specifically, the Court found Plaintiff's original complaint stated the following cognizable claims: (1) a First Amendment retaliation claim against Defendant Merritt; (2) Eighth Amendment deliberate

indifference to serious medical needs claims against Defendants Fishburn and Merritt; and (3) a Fourteenth Amendment equal protection violation against Defendant Carlson. (*Id*. at 5-26.) However, Plaintiff's complaint failed to state any other cognizable claims for relief against any other defendant. (*Id*. at 27.) Plaintiff was directed to select one of the following three options: (1) notify the Court in writing that he did not wish to file a first amended complaint and he was willing to proceed only on his First Amendment retaliation claim against Defendant Merritt, Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Fishburn and Merritt, and Fourteenth Amendment equal protection violation against Defendant Carlson, with the remaining claims and defendants to be dismissed; or (2) file a first amended complaint curing the deficiencies identified by the Court in the screening order; or (3) file a notice of voluntary dismissal. (*Id*. at 27-28.)

On April 21, 2023, Plaintiff filed a first amended complaint. (Doc. 32.)

On June 20, 2023, District Judge Jennifer L. Thurston[1] issued an Order Adopting Findings and Recommendations to Deny Plaintiff's Motion for Protection Order. (Doc. 33.)

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**III.    PLEADING REQUIREMENTS**

**A. Federal Rule of Civil Procedure 8(a)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

---

[1] This action was reassigned to Judge Thurston on April 11, 2023, following Judge Ishii's retirement. (Doc. 29.)

2

"a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of *pro se* prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B.  Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**IV.   DISCUSSION**

**A.  Plaintiff's First Amended Complaint**

Plaintiff's first amended complaint[2] is 26 pages in length and is supported by 112 additional pages of exhibits. (Doc. 32.) Plaintiff names Nurse Practitioner Lura Merritt, and Registered Nurses Monica Fishburn and Catherine Carlson, all employed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran California, as defendants in the action. (*Id*. at 1-3, 14.)[3] Plaintiff sues Defendants Merritt, Fishburn and Carlson in their official and personal capacities. (*Id*. at 14.)

Plaintiff seeks a declaratory judgment, a special master or receiver to oversee this action, injunctive relief, and other relief not recounted here. (*See* Doc. 32 at 5, 23-25.)

**B.  Plaintiff's Factual Allegations**

Initially, the Court notes Plaintiff's first amended complaint, like his original complaint, is often difficult to follow. It is rambling, references voluminous exhibits in a confusing fashion[4] and includes unnecessary detail. As before, the Court will endeavor to screen the first amended complaint but will not summarize its unnecessary detail or reference the exhibits. Nor is the Court required to accept Plaintiff's legal theories or conclusions. *Neitzke*, 490 U.S. at 330 n.9.

---

[2] The first amended complaint is comprised of several pages from a form amended complaint and a separate typed document titled "First Amended Complaint for Injunctive Relief for Imminent Danger Inadequate Medical Health No Doctor B-Facility Clinic Where nurse Practioner [sic] Misdiagnose and Valley Fever Prison Retains African Americans for Morbidity and Death and No Mitigation of Inhalation of Cocci Fungus Spores."

[3] Page number references are to those assigned by this Court's CM/ECF system.

[4] *See, e.g.*, *Blair v. CDCR*, No. 1:14-cv-01156-SAB (PC), 2014 WL 13025127, at *2 (Nov. 7, 2014) ("With regard to exhibits that are properly attached and incorporated, Plaintiff is cautioned that it is the Court's duty to evaluate the factual allegations within a complaint, not to wade through exhibits, to determine whether cognizable claims have been stated"); *Andreas v. Yates*, No. 1:08-cv-01410-LJO-SMS PC, 2009 WL 302291, at *1 (E.D. Cal. Feb. 6, 2009) ("If Plaintiff opts to submit exhibits, he must cite to them with specificity and he may not rely on them to state his claims for him").

Plaintiff contends that on February 10, 2019, he submitted a health request for renewal of an egg crate mattress or receipt of a gel guard mattress. (Doc. 32 at 14.)

Plaintiff was seen by Defendant Fishburn on February 11, 2019, for uncontrolled urination and defecation. (Doc. 32 at 15.) Fishburn refused to physically examine Plaintiff, stating he had too many issues. (*Id.*) Plaintiff asserts Fishburn "deferred to RN Huffman as Dr. 2/11/19 for Egg Create [sic] Mattress." (*Id.*)

On February 13, 2019, Plaintiff submitted two health requests. (Doc. 32 at 15.) He wished to see a male nurse and to be moved to have better access to a toilet. (*Id.*) Plaintiff also sought a "Tuskeegee Test, Blood Draws, X-Rays or sent CTC in Golf Cart as Level 2 inmate & Not Level 4." (*Id.*) That same date, Plaintiff submitted another health request for headaches, dizziness, and severe back and neck pain. (*Id.*) His request also complained that medical staff were not wearing "Badge Insignia" in accordance with regulations and that he could not speak confidentially during appointments, among other issues. (*Id.*)

Plaintiff contends he as seen by "LVN Goso"[5] and Defendant Merritt on February 24, 2019. (Doc. 32 at 15.) Merritt only discussed Plaintiff's foot issues, refusing to discuss the issues in Plaintiff's health request. (*Id.*) Plaintiff complains the blood pressure cuff could not be placed because it was too tight, and the temperature face-scan and finger pulse machines needed to be cleaned. (*Id.* at 15-16.)

Plaintiff further asserts he filed grievances on March 21, 2019 and April 4, 2019. (Doc. 32 at 16.)

On April 10, 2019, Plaintiff contends he sent a letter to the California Department of Public Health concerning the denial of medical care, black mold, and Valley Fever. (Doc. 32 at 16.) He received no response. (*Id.*)

On May 22, 2019, Plaintiff received institutional level denials to several grievances. (Doc. 32 at 16.)

On June 12, 2019, Plaintiff submitted a health request for dizziness and severe tension

---

[5] This individual is not named as a defendant in this action.

headaches, seeking cooling measures due to the extreme heat. (Doc. 32 at 17.) Plaintiff states he was not seen by Defendant Carlson and that Carlson was antagonistic and confrontational. (*Id*.)

Plaintiff contends that on July 24, 2019, he was "called to Work-Exchange for Crisis Treatment/Torture Center (CTC) for 'Blood Draw,'" stating he did not speak or see medical staff on that occasion. (Doc. 32 at 17.)

Plaintiff asserts he filed a "'Group Class'" complaint against Defendant Carlson on July 27, 2019, concerning Carlson's refusal to conduct medical interviews and examinations, and to dispense medications and appliances. (Doc. 32 at 17.)

On September 13, 2019, Plaintiff received an institutional response denying other grievances. (Doc. 32 at 17.)

Plaintiff contends that on December 12, 2019, he received "2019 Title 15…New Rules Medical health Care," which included information concerning Valley Fever. (Doc. 32 at 18.)

On December 31, 2019, Plaintiff contends he fell in a "Deep Rut," breaking the wheels on his walker. (Doc. 32 at 18.)  He apparently submitted a health request regarding this incident but was refused treatment "for Outside Dr." on January 2, 2020. (*Id*.)

On January 11, 2020, Plaintiff submitted a health care request for a cervical pillow, replacement handgrips for his walker, and padded knee braces. (Doc. 32 at 18-19.) Plaintiff states "No CERVICAL PILLOW for neck Bone Crushed before & Stops PAIN." (*Id*. at 19.)

On January 14, 2020, Plaintiff received a headquarters level response denying earlier grievances. (Doc. 32 at 17-18.)

Plaintiff contends that on January 23, 2023, he filed a "'Group Class'" complaint against Defendant Merritt. (Doc. 32 at 19.) He sought to remove Merritt from working in the facility, stating Merritt was not a medical doctor and fails to listen, assess, diagnose or evaluate inmate patients, among other complaints. (*Id*.)

On March 12, 2020, Plaintiff was interviewed by G. Ugeweze concerning his complaint against Defendant Merritt. (Doc. 32 at 19.) He received an institutional response on April 6, 2020, indicating no intervention would be taken. (*Id*.) On April 15, 2020, Plaintiff "responded" to "Supervisor's requirements, and Assessment of existing Care Team Members, & Plaintiff CPAP

6

1  Breating [sic] Machine & other needs." (Doc. 32 at 20.)

2  On June 15, 2020, Plaintiff filed a habeas corpus petition in Kings County Superior Court "against Nurse Practioner [sic] Lura Merritt & SATF" concerning the denial of medical care. (Doc. 32 at 20.)

5  On July 7, 2020, Plaintiff received a headquarters level response, apparently denying several earlier requests. (Doc. 32 at 20.)

7  Plaintiff contends that on July 14, 2020, he sent a letter to the Equal Employment Opportunity Commission, seeking an investigation of SATF's B-Facility for employment discrimination "Latinos 90% Staff," a lack of training, and denial of adequate medical care. (Doc. 32 at 20.) Plaintiff did not receive a response. (*Id.*)

11  On August 11, 2020, Plaintiff "Petitioned for Review, court of appeals, & Denied August 25, 2020." (Doc. 32 at 20.) A petition for review filed in the California Supreme Court was denied October 14, 2020. (*Id.*)

14  Plaintiff contends he has brought "Multiple [I]ssues" in the United States District Court for the Northern District, including an action that was transferred to this Court, citing to case number 1:19-cv-00970,[6] that was dismissed without prejudice on February 19, 2020. (Doc. 32 at 20.) Plaintiff alleges he then "filed Structural Injunction, THREE JUDGE-PANEL" in August 2021 with the Northern District. (*Id.*)

19  Plaintiff asserts that from April 12, 2023 to April 15, 2023, he gathered signatures regarding Defendant Merritt's various inadequacies. (Doc. 32 at 21.)

21  **C. Plaintiff's Claims**

22  Initially, Plaintiff is advised he cannot sue Defendants Merritt, Fishburn and Carlson in their official capacities. *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities"). He may proceed against these

---

[6] Case No. 1:19-cv-00970-DAD-GSA was dismissed without prejudice for Plaintiff's failure to obey court orders, failure to pay the filing fee and failure to prosecute on February 20, 2020. *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (court may take judicial notice of "documents on file in federal or state courts").

7

individuals in their individual or personal capacities only. *Hafer v. Melo*, 502 U.S. 21, 30 (1991) (the Eleventh Amendment does not bar suits for money damages against state officials in their personal capacities).

Claim One

Plaintiff titles his first cause of action "Cruel and Unusual Punishment-Deliberate Indifferent Valley Fever/medical Condition." (Doc. 32 at 21.) He asserts Defendants have violated his rights and intentionally inflicted "severe physical suffering & exposure to Fungus Spores Inhalation for morbidity and Death." (*Id*.) Plaintiff contends he has been exposed for over three years, and "PLATA Court Order 6/24/2013, & 602-HC, and documents therein made aware of Valley Fever at Institution & Headquarters Levels participated in other acts, & had conscious choice by Direct review for Policy for Equal Protection requirements and omitted to perform legally required action to correct deprivations & non-exclusion Policy Blacks for moving force is retention." (*Id*.)

The Court construes Plaintiff's first claim to allege Eighth Amendment deliberate indifference claims against the named Defendants.

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (1994) (quoting *Whitley*, 475 U.S. at 319). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)).

9

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

Here, liberally construing the first amended complaint, Plaintiff has met the first, objective prong of the deliberate indifference test by alleging he suffers from numerous medical conditions a reasonable doctor or patient would find important and worthy of comment or treatment or that significantly affect his daily activities. *Colwell,* 763 F.3d at 1066.

Regarding the second, subjective prong of the relevant test, and liberally construing the first amended complaint, Plaintiff plausibly alleges Defendant Fishburn knew Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the risk by refusing to address Plaintiff's incontinence and need for an egg crate mattress. *Farmer*, 511 U.S. at 847. Further, Plaintiff plausibly alleges a claim against Defendant Merritt by alleging she knew he faced a substantial risk of serious harm and disregarded that risk by refusing to address his claims concerning headaches, dizziness, and severe back and neck pain. *Id*. Lastly, Plaintiff plausibly alleges a claim against Defendant Carlson by asserting Carlson knew he faced a substantial risk of serious harm and disregarded that risk when she refused to see or treat him following his complaints of dizziness and severe tension headaches. *Id*.

In sum, Plaintiff states cognizable Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Fishburn, Merritt and Carlson, in their individual capacities.

### Claim Two

Plaintiff titles his second cause of action "First Amendment Retaliation." (Doc. 32 at 21.) Specifically, he alleges Defendant Merritt violated his First Amendment rights. (*Id*.)

Prisoners have a First Amendment right to file prison grievances and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1)

that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Here, liberally construing the first amended complaint, Plaintiff plausibly alleges a retaliation claim against Defendant Merritt by asserting Merritt refused to treat Plaintiff because he filed health care grievances complaining about Merritt's lack of cleanliness and other deficiencies, chilling the exercise of Plaintiff's First Amendment rights in the absence of a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

In sum, Plaintiff alleges a cognizable First Amendment retaliation claim against Defendant Merritt in her individual capacity. Plaintiff fails to allege a retaliation claim against any other defendant.

### Claim Three – Eighth Amendment

Plaintiff's third cause of action is titled "Fourteenth Amendment Equal Protection and Eighth Amendment Condition." (Doc. 32 at 22.) He contends his Eighth and Fourteenth Amendment rights "for access to adequate medical doctor's, and medical facility, that does not threaten physical well being of morbidity and death by inhalation of cocci fungus spores as Valley Fever, without facing Higher Risk of Getting Sick as U.S.N.D. Court Order & at Opinion, as specific race designated to meet PLATA Settlement and U.S.N.D. Orders, for medical denials,

11

and CSATF non-compliance to its own rules & regs.," unrelated to any legitimate penological goal "for medical assessment, diagnosis and evaluations, and for exclusion cocci facility, where over-crowding is a primary reason for African [sic] Americans in a hyperdemic cocci fungus prison without adequate shelter conditions." (*Id*.)

The Court construes Plaintiff's third claim for relief to arise under the Eighth Amendment relating to conditions of confinement. To the extent the claim also references the Fourteenth Amendment equal protection clause, the Court addresses it below along with Plaintiff's fourth claim for relief.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of the Eighth Amendment, the prisoner must "show that the officials acted with deliberate indifference …." *Labatad v. Corrections Corp. of America*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002).

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837; *Anderson v. County of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995).

Objectively, extreme deprivations are required to make out a conditions of confinement claim and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Although the Constitution "'does not mandate comfortable prisons,'" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), "inmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time," *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.

1989). Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise -- for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson*, 501 U.S. at 304-05 (comparing *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) [outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day] with *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980) [outdoor exercise not required when prisoners otherwise had access to dayroom 18 hours per day]). To say that some prison conditions may interact in this fashion is far from saying that all prison conditions are a seamless web for Eighth Amendment purposes. *Id*. Amorphous "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Id*. Further, temporarily unconstitutional conditions of confinement do not necessarily rise to the level of constitutional violations. *See Anderson*, 45 F.3d 1310, citing to *Hoptowit v. Ray*, 682 F.2d 1237, 1258 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (in evaluating challenges to conditions of confinement, length of time the prisoner must go without basic human needs may be considered)).

Subjectively, if an objective deprivation is shown, a plaintiff must show that prison officials acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160. "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson*, 290 F.3d at 1188). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

Here, liberally construing the first amended complaint, Plaintiff fails to allege cognizable Eighth Amendment conditions of confinement claims against Defendants Fishburn, Merritt or Carlson. While Plaintiff meets the objective prong of the relevant test by alleging his exposure to Valley Fever given his susceptibility to the disease is sufficiently serious, Plaintiff again fails to show a sufficient casual connection or link between any knowledge or awareness by Defendants Fishburn, Merritt or Carlson and the constitutional deprivation alleged. General assertions concerning the existence of the *Plata* litigation does not establish that Fishburn, Merritt or Carlson were aware of a sufficiently serious risk to Plaintiff. None of the factual allegations specific to the actions of Fishburn, Merritt or Carlson pertain to Plaintiff's claim of Valley Fever exposure. It is not enough that Plaintiff references correspondence sent to state agencies complaining of Valley Fever exposure, among various other complaints, while vaguely referencing a lack of doctors and nurses, or "other Nurses's" that "ignore" requests or "subvert" health issues. Nor does the fact Plaintiff complained about Defendants Merritt and Carlson in "'Group Class'" health care complaints causally connect Merritt or Carlson to having the required knowledge of the specific risk to Plaintiff. *Wilson*, 501 U.S. at 303; *Labatad*, 714 F.3d at 1160; *Toguchi*, 391 F.3d at 1060.

In sum, Plaintiff fails to allege a cognizable Eighth Amendment conditions of confinement claim against any named Defendant.

<u>Claims Three and Four – Fourteenth Amendment</u>

Plaintiff's fourth cause of action is titled "Federal Equal Protection Clause." (Doc. 32 at 22.) Plaintiff contends Defendants have denied him and others equal protection of the law by intentionally discriminating against him and others similarly situated based on an "increased risk severe cocci disease that includes ethnicity of African Americans as plaintiff to be excluded from race-based housing that's distinguishable under Plata Courts policy of membership." (*Id*.) Further, Plaintiff alleges Defendants have discriminated against him based on his membership in a racial group "in violation of the International Convention of the Elimination of All Forms [of] Racial Discrimination, which entered into force in the United States on November 20, 19941." (*Id*. at 22-23.)

14

1    The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013). To state a claim, a plaintiff must show that defendants intentionally discriminated against him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123.

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S.562, 564 (2000). Further, to establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976

Here, liberally construing the first amended complaint, Plaintiff plausibly alleges a Fourteenth Amendment equal protection clause violation against Defendant Carlson. This is so because Plaintiff contends Carlson, in an antagonistic and confrontational manner, refused to allow him to see a physician "to Target plaintiff and other African Americans … by hostality [sic] for race based discrimination." However, Plaintiff fails to plausibly allege equal protection claims against Defendants Fishburn or Merritt. Plaintiff's references to correspondence sent to state agencies complaining of he "& other similarly situated Older African American prisoners" and vaguely referencing a lack of doctors and nurses, or "other Nurses's" that "ignore" requests or "subvert" health issues, or that "Nurses violate Title VII & Equal Protection," are insufficient to state a claim. And Plaintiff's vague and confusing references to Merritt violating his equal protection rights are also insufficient to state a claim. (*See* Doc. 32 at 19 ["for Merritt keeps Plaintiff Ips in SATF violating CCR 3999.410(b) CTS may be medically restricted from Cocci-2 area based on other needs. Valley Fever Merritt has Not had I/Ps sign Waiver & CCR 3999.411(a)(4)(7) & transferred for most are Black & Merritt reverse discrimination CCR

1  3004(c)…."].)

2        In sum, Plaintiff states a cognizable Fourteenth Amendment equal protection clause violation against Defendant Carlson in her individual capacity. However, he fails to allege a federal equal protection claim against any other name Defendant.

Claim Five

Plaintiff's fifth cause of action is titled "State Equal Protection Claim." (Doc. 32 at 23.) He contends Defendants have violated his rights under the California Constitution by intentionally discriminating against him and others similarly situated "on his membership in a suspect class, and on-going by participating in others acts where final Policy & conscious choice to deny Equal Protection requirements were omitted to perform where Notice given by grievance Direct, and legally required action to correct the deprivations was the moving force to ignore discrimination by subordinators, and the Non-exclusion Policy to retain Blacks CSATF." (Id.)

The California Constitution mandates equal protection of the laws just as the United States Constitution does. *See* Cal. Const. Art. I, § 7(a); *In re Evans*, 49 Cal.App.4th 1263, 1270 (1996). "The equal protection analysis under the California Constitution is 'substantially similar' to analysis under the federal Equal Protection Clause." *Rui One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004); *Walgreen Co. v. City & County of San Francisco*, 185 Cal.App.4th 424, 434 n. 7 (2010).

To the extent Plaintiff has plausibly alleged a Fourteenth Amendment equal protection clause violation against Defendant Carlson, he has plausibly alleged a state equal protection violation against Defendant Carlson as well. However, Plaintiff fails to allege a state law equal protection claim against any other named Defendant.

**V.     FURTHER AMENDMENT WOULD BE FUTILE**

If the court finds that a complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000). "A district court may deny leave to amend when amendment would be futile." *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013). Here, as to those claims identified herein as not cognizable—retaliation claims against Carlson and Fishburn,

conditions of confinement claims against all Defendants, and federal and state equal protection claims against Defendants Fishburn and Merritt— this Court finds granting further leave to amend would be futile given the Court's earlier identification in its First Screening Order of the same or similar deficiencies that Plaintiff was unable to cure in the pending, operative first amended complaint. *See Metzler Inv. GMBH v. Corinthian Colls., Inc*., 540 F.3d 1049, 1072 (9th Cir. 2008) (explaining that "the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint") (citation and internal quotation marks omitted).

**VI.  CONCLUSION AND RECOMMENDATIONS**

For the reasons given above, **IT IS HEREBY RECOMMENDED** that:

1. This action **PROCEED** only on the following claims: (1) Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Fishburn, Merritt and Carlson, in their individual capacities; (2) a First Amendment retaliation claim against Defendant Merritt, in her individual capacity; (3) a Fourteenth Amendment equal protection clause violation against Defendant Carlson, in her individual capacity; and (4) a state law equal protection clause violation against Defendant Carlson, in her individual capacity, pursuant to 42 U.S.C. § 1983;

2. All other claims asserted in Plaintiff's first amended complaint against Defendants Fishburn, Merritt and Carlson be **DISMISSED**; and

3. That following individuals or entities be **DISMISSED** from this action:
    a. Public Entity of CDCR in Corcoran Calif
    b. Jessia Huffman
    c. Registered Nurses at SATF
    d. S. Thomas
    e. E. Johnson
    f. Melisa Fritz
    g. Godwin Ugwueze
    h. Clarence Cryer, Jr.

    i. California Department of Correction and Rehabilitation

    j. Public Entity State Administration of Prisons in Sacramento CA

  These Findings and Recommendations will be submitted to the district judge assigned to this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **November 21, 2023**       _____
                    UNITED STATES MAGISTRATE JUDGE