UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

<table>
<tr><td>DAVID WAYNE WILSON,<br><br>   Plaintiff,<br><br> v.<br><br>LURA MERRITT, et al.,<br><br>   Defendants.</td><td>Case No.: 1:22-cv-00455-JLT-CDB (PC)<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANT CORREA'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE EXHAUSTION AND TO GRANT IN PART AND DENY IN PART DEFENDANT MERRITT'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE EXHAUSTION**<br><br>(Doc. 90)<br><br>**14-DAY OBJECTION PERIOD**</td></tr>
</table>

Plaintiff David Wayne Wilson is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

## I. INTRODUCTION

This action proceeds on Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Correa,[1] Merritt and Carlson; (2) First Amendment retaliation claim against Merritt; (3) Fourteenth Amendment equal protection clause violation against Carlson; and (4) state law equal protection clause violation against Carlson.

On April 30, 2025, Defendants Correa and Merritt filed a motion for partial summary

---

[1] "Defendant Correa is sued under the name 'Fishburn.'" (*See* Doc. 53 at 1, n.1 [Defendants' Answer to Plaintiff's First Amended Complaint].) Apart from quoted material, Correa is used herein.

judgment alleging Plaintiff failed to exhaust his administrative remedies. (Doc. 90.) Plaintiff filed an opposition on June 9, 2025 (Doc. 94), and Defendants replied on July 21, 2025 (Doc. 99).

## II.   APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

### B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that the plaintiff failed to exhaust that remedy. *Id.* at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). "However, … the ultimate burden of proof remains with the defendant." *Id.*

An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when prison administrators thwart inmates from taking advantage of a grievance process through

3

machination, misrepresentation, or intimidation." *Id*. at 643-44.

When the district court concludes that the prisoner has not exhausted administrative remedies on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*, 747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court finds that remedies were not available, the prisoner exhausted available remedies, or the failure to exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

### C.  CDCR Grievance Process

The California Department of Corrections and Rehabilitation's health grievance process involves a two-step procedure for addressing an inmate's health care concerns. *See* Cal. Code Regs. tit. 15, § 3999.225, et seq. First, "[t]he grievant shall complete Section A of the CDCR 602 HC and submit to the HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) The action or decision being grieved, or; (2) Initial knowledge of the action or decision being grieved." Cal. Code Regs. tit. 15, § 3999.227(b); *see id*., § 3999.225(n) (defining HCGO). "The grievant shall document clearly and coherently all information known and available to him or her regarding the issue ... includ[ing] any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." *Id*., § 3999.227(g).

Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition ... to HCCAB [Health Care Correspondence and Appeals Branch] ... within 30 calendar days plus five calendar days for mailing ...." Cal. Code Regs. tit. 15, § 3999.229(a); *see id*., § 3999.225(l) (defining HCCAB). "The headquarters' level review constitutes the final disposition on a health care grievance and exhausts administrative remedies ...." *Id*., § 3999.230(h); *see id*. § 3999.226(g) ("Health care grievances are subject to a

4

headquarters' level disposition before administrative remedies are deemed exhausted pursuant to section 3999.230. A health care grievance or health care grievance appeal rejection or withdrawal does not exhaust administrative remedies").

### III.    SUMMARY OF THE PARTIES' BRIEFING

#### *Defendants Correa and Merritt's Partial Motion for Summary Judgment*

Defendants Correa and Merritt contend Plaintiff did not exhaust his administrative remedies concerning his Eighth Amendment deliberate indifference to serious medical needs claim against Correa and his First Amendment retaliation claim against Merritt. Specifically, Correa contends Plaintiff did not exhaust his deliberate indifference claim against her in SATF HC 19000421 or any other grievance. Further, Merritt argues Plaintiff did not exhaust his retaliation claim against her in SATF HC 20000106, SATF HC 22001107, SATF HC 22001215, SATF HC 23000107, or any other grievance. Defendants maintain they are entitled to summary judgment for Plaintiff's failure to exhaust his administrative remedies concerning these claims against them. Defendants argue this Court should dismiss Plaintiff's deliberate indifference claim against Correa, without prejudice, and dismiss Correa as a Defendant as this action does not involve any other claim against Correa. Defendants also assert Plaintiff's retaliation claim against Merritt should be dismissed without prejudice.

#### *Plaintiff's Opposition*

Plaintiff contends an administrative remedy was available to him and that he exhausted those remedies concerning his claims against Defendants Correa and Merritt. Specifically, Plaintiff asserts he exhausted his administrative remedies concerning his claim against Defendant Correa through SATF HC 19000421. Separately, Plaintiff maintains he exhausted his claim against Defendant Merritt through SATF HC 20000106, SATF HC 22001107, SATF HC 22001215, and in other grievances. He argues the Court should deny Defendants' motion.

#### *Defendants' Reply*

Defendants assert Plaintiff merely restates his allegations and submits numerous documents purportedly demonstrating exhaustion of his administrative remedies. However, Defendants contend Plaintiff fails to rebut Correa's argument that Plaintiff's grievance did not

alert SATF to his complaints concerning Correa's actions. Further, they maintain Plaintiff fails to demonstrate he exhausted his administrative remedies as concerns claim against Merritt for retaliation by way of refusing to provide medical treatment. Defendants assert Plaintiff's supporting submissions do not clearly explain how Plaintiff exhausted his claims against Correa and Merritt. Additionally, Defendants maintain Plaintiff's exceptions and denials to their undisputed facts are unclear.

### IV.    PLAINTIFF'S OPERATIVE COMPLAINT

Upon screening of the first amended complaint, this Court summarized Plaintiff's factual allegations as follows:

> Initially, the Court notes Plaintiff's first amended complaint, like his original complaint, is often difficult to follow. It is rambling, references voluminous exhibits in a confusing fashion and includes unnecessary detail. As before, the Court will endeavor to screen the first amended complaint but will not summarize its unnecessary detail or reference the exhibits. Nor is the Court required to accept Plaintiff's legal theories or conclusions. *Neitzke*, 490 U.S. at 330 n.9.

> Plaintiff contends that on February 10, 2019, he submitted a health request for renewal of an egg crate mattress or receipt of a gel guard mattress. (Doc. 32 at 14.)

> Plaintiff was seen by Defendant Fishburn on February 11, 2019, for uncontrolled urination and defecation. (Doc. 32 at 15.) Fishburn refused to physically examine Plaintiff, stating he had too many issues. (*Id*.) Plaintiff asserts Fishburn "deferred to RN Huffman as Dr. 2/11/19 for Egg Create [sic] Mattress." (*Id*.)

> On February 13, 2019, Plaintiff submitted two health requests. (Doc. 32 at 15.) He wished to see a male nurse and to be moved to have better access to a toilet. (*Id*.) Plaintiff also sought a "Tuskegee Test, Blood Draws, X-Rays or sent CTC in Golf Cart as Level 2 inmate & Not Level 4." (*Id*.) That same date, Plaintiff submitted another health request for headaches, dizziness, and severe back and neck pain. (*Id*.) His request also complained that medical staff were not wearing "Badge Insignia" in accordance with regulations and that he could not speak confidentially during appointments, among other issues. (*Id*.)

> Plaintiff contends he as seen by "LVN Goso" and Defendant Merritt on February 24, 2019. (Doc. 32 at 15.) Merritt only discussed Plaintiff's foot issues, refusing to discuss the issues in Plaintiff's health request. (*Id*.) Plaintiff complains the blood pressure cuff could not be placed because it was too tight, and the temperature face-scan and finger pulse machines needed to be cleaned. (*Id*. at 15-16.)

> Plaintiff further asserts he filed grievances on March 21, 2019 and

April 4, 2019. (Doc. 32 at 16.)

On April 10, 2019, Plaintiff contends he sent a letter to the California Department of Public Health concerning the denial of medical care, black mold, and Valley Fever. (Doc. 32 at 16.) He received no response. (*Id*.)

On May 22, 2019, Plaintiff received institutional level denials to several grievances. (Doc. 32 at 16.)

On June 12, 2019, Plaintiff submitted a health request for dizziness and severe tension headaches, seeking cooling measures due to the extreme heat. (Doc. 32 at 17.) Plaintiff states he was not seen by Defendant Carlson and that Carlson was antagonistic and confrontational. (*Id*.)

Plaintiff contends that on July 24, 2019, he was "called to Work-Exchange for Crisis Treatment/Torture Center (CTC) for 'Blood Draw,'" stating he did not speak or see medical staff on that occasion. (Doc. 32 at 17.)

Plaintiff asserts he filed a "'Group Class'" complaint against Defendant Carlson on July 27, 2019, concerning Carlson's refusal to conduct medical interviews and examinations, and to dispense medications and appliances. (Doc. 32 at 17.)

On September 13, 2019, Plaintiff received an institutional response denying other grievances. (Doc. 32 at 17.)

Plaintiff contends that on December 12, 2019, he received "2019 Title 15…New Rules Medical health Care," which included information concerning Valley Fever. (Doc. 32 at 18.)

On December 31, 2019, Plaintiff contends he fell in a "Deep Rut," breaking the wheels on his walker. (Doc. 32 at 18.) He apparently submitted a health request regarding this incident but was refused treatment "for Outside Dr." on January 2, 2020. (*Id*.)

On January 11, 2020, Plaintiff submitted a health care request for a cervical pillow, replacement handgrips for his walker, and padded knee braces. (Doc. 32 at 18-19.) Plaintiff states "No CERVICAL PILLOW for neck Bone Crushed before & Stops PAIN." (*Id*. at 19.)

On January 14, 2020, Plaintiff received a headquarters level response denying earlier grievances. (Doc. 32 at 17-18.)

Plaintiff contends that on January 23, 2023, he filed a "'Group Class'" complaint against Defendant Merritt. (Doc. 32 at 19.) He sought to remove Merritt from working in the facility, stating Merritt was not a medical doctor and fails to listen, assess, diagnose or evaluate inmate patients, among other complaints. (*Id*.)

On March 12, 2020, Plaintiff was interviewed by G. Ugeweze concerning his complaint against Defendant Merritt. (Doc. 32 at 19.) He received an institutional response on April 6, 2020, indicating no

7

intervention would be taken. (*Id*.) On April 15, 2020, Plaintiff "responded" to "Supervisor's requirements, and Assessment of existing Care Team Members, & Plaintiff CPAP Breating [sic] Machine & other needs." (Doc. 32 at 20.)

On June 15, 2020, Plaintiff filed a habeas corpus petition in Kings County Superior Court "against Nurse Practioner [sic] Lura Merritt & SATF" concerning the denial of medical care. (Doc. 32 at 20.)

On July 7, 2020, Plaintiff received a headquarters level response, apparently denying several earlier requests. (Doc. 32 at 20.)

Plaintiff contends that on July 14, 2020, he sent a letter to the Equal Employment Opportunity Commission, seeking an investigation of SATF's B-Facility for employment discrimination "Latinos 90% Staff," a lack of training, and denial of adequate medical care. (Doc. 32 at 20.) Plaintiff did not receive a response. (*Id*.)

On August 11, 2020, Plaintiff "Petitioned for Review, court of appeals, & Denied August 25, 2020." (Doc. 32 at 20.) A petition for review filed in the California Supreme Court was denied October 14, 2020. (*Id*.)

Plaintiff contends he has brought "Multiple [I]ssues" in the United States District Court for the Northern District, including an action that was transferred to this Court, citing to case number 1:19-cv-00970, that was dismissed without prejudice on February 19, 2020. (Doc. 32 at 20.) Plaintiff alleges he then "filed Structural Injunction, THREE JUDGE-PANEL" in August 2021 with the Northern District. (*Id*.)

Plaintiff asserts that from April 12, 2023 to April 15, 2023, he gathered signatures regarding Defendant Merritt's various inadequacies. (Doc. 32 at 21.)

(*See* Doc. 34 at 4-7 [footnotes omitted].)

In relevant part, the Court found the following regarding Plaintiff's Claim One:

The Court construes Plaintiff's first claim to allege Eighth Amendment deliberate indifference claims against the named Defendants.

[¶] – [¶]

Here, liberally construing the first amended complaint, Plaintiff has met the first, objective prong of the deliberate indifference test by alleging he suffers from numerous medical conditions a reasonable doctor or patient would find important and worthy of comment or treatment or that significantly affect his daily activities. *Colwell*, 763 F.3d at 1066.

Regarding the second, subjective prong of the relevant test, and liberally construing the first amended complaint, Plaintiff plausibly

8

alleges Defendant Fishburn knew Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate the risk by refusing to address Plaintiff's incontinence and need for an egg crate mattress. *Farmer*, 511 U.S. at 847. Further, Plaintiff plausibly alleges a claim against Defendant Merritt by alleging she knew he faced a substantial risk of serious harm and disregarded that risk by refusing to address his claims concerning headaches, dizziness, and severe back and neck pain. *Id*. Lastly, Plaintiff plausibly alleges a claim against Defendant Carlson by asserting Carlson knew he faced a substantial risk of serious harm and disregarded that risk when she refused to see or treat him following his complaints of dizziness and severe tension headaches. *Id*.

In sum, Plaintiff states cognizable Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Fishburn, Merritt and Carlson, in their individual capacities.

(Doc. 34 at 9-10.) Next, concerning the First Amendment retaliation claim against Defendant Merritt, the Court found as follows:

Here, liberally construing the first amended complaint, Plaintiff plausibly alleges a retaliation claim against Defendant Merritt by asserting Merritt refused to treat Plaintiff because he filed health care grievances complaining about Merritt's lack of cleanliness and other deficiencies, chilling the exercise of Plaintiff's First Amendment rights in the absence of a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

In sum, Plaintiff alleges a cognizable First Amendment retaliation claim against Defendant Merritt in her individual capacity. Plaintiff fails to allege a retaliation claim against any other defendant.

(Doc. 34 at 11.)

## V.  DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

### *The Parties*

1. Plaintiff is incarcerated in the custody of the California Department of Corrections and Rehabilitation ("CDCR").

2. Plaintiff arrived at [the Substance Abuse Treatment Facility (SATF)] on January 28, 2019.

3. Plaintiff filed his operative First Amended Complaint ("FAC") in this action on April 21, 2023.

4. At all relevant times, Defendant Correa was a Registered Nurse ("RN") at SATF.

5. At all relevant times, Defendant Merritt was a Nurse Practitioner at SATF.

***Plaintiff's Deliberate Indifference Claim against Correa***

6. On February 10, 2019, Plaintiff submitted a CDCR 7362 ("health-care request") to renew his egg crate mattress or to obtain a gel guard mattress. On February 11, 2019, Plaintiff saw Correa and explained his medical issues to her, which included uncontrolled urination and defecation. Correa stated that Plaintiff had too many issues, refused to examine Plaintiff, and deferred to RN Huffman as a doctor to address Plaintiff' request for an egg crate mattress.

7. Based on Correa's alleged refusal "to address Plaintiff's incontinence and need for an egg create matter," the Court found that Plaintiff stated a cognizable Eighth Amendment deliberate indifference claim against Correa.

***Plaintiff's Retaliation Claim against Merritt***

8. On March 21, 2019, Plaintiff filed a health-care grievance, Tracking No. SATF HC 19000421, which named Merritt. On March 28, 2019, Merritt "called in for reprisal CCR 3999.26(e), & claim Façade to Feet, & plaintiff requested C/O Rutledge present preventing First Amendment violated rights, & plaintiff spoke of Med. Issues, & No Confidential Exams & left, & C/O Rutledge came outside & states: NP Merritt claim REFUSAL." On January 23, 2020, Plaintiff filed a health-care grievance, Tracking No. SATF HC 20000106, which named Merritt. Thereafter, Merritt continued to harass Plaintiff "by scheduling 'Test,' & Not spoken to, & calls in for Interview in reprisal."

9. The Court found that Plaintiff stated a cognizable First Amendment retaliation claim based on his allegation that "Merritt refused to treat Plaintiff because he filed health care grievances complaining about Merritt's lack of cleanliness and other deficiencies."

***CDCR's Grievance Process: Health Care Grievances***

10. Since August 1, 2008, the California Correctional Health Care Services has processed incarcerated persons' grievances regarding medical, dental, and mental health care

issues under the Office of the Federal Received appointed in the class action litigation regarding prison health care. Plata v. Newsom, Case No. 3:01-cv-01351 (N.D. Cal.).

11. Since September 2017, health care grievances have been subject to two levels of administrative review – an institutional level of review and a headquarters level of review.

12. To begin the health care grievance process, an incarcerated person must submit a health care grievance to his institution's Health Care Grievance Office ("HCGO").

13. In the health care grievance, the incarcerated person must describe his "specific complaint" and document clearly and coherently all information known" to the incarcerated person about the issue, including the names of involved staff members.

14. Then, the HCGO processes the health care grievance and provides the institutional level review.

15. The incarcerated person may appeal the institutional level response in his health care grievance to the Health Care Correspondence and Appeals Branch ("HCCAB").

16. In his appeal of a health care grievance, an incarcerated person may not grieve an issue that he did not present in his health care grievance.

17. The HCCAB receives, reviews, and maintains all health care grievances accepted for the final, headquarters level of review and renders decisions on such health care grievances.

18. Disposition at the headquarters level of review is required before a health care grievance is exhausted.

19. All levels of health care grievances, including the institutional and headquarters levels of review, are tracked through a computer database known as the Health Care Appeals and Risk Tracking System.

***Non-Health Care Grievances***

20. At all relevant times, CDCR provided an administrative remedy process for non-health care grievances.

11

21. The Inmate/Parolee Appeals Tracking System ("IATS") tracks non-health care grievances submitted before June 1, 2020.

22. The Offender Grievance Tracking System ("OGT") tracks non-health care grievances submitted on or after June 1, 2020.

***Plaintiff's Use of CDCR's Grievance Process***

23. Plaintiff submitted the following health care grievances between January 28, 2019 and April 21, 2023.

24. On March 21, 2019, Plaintiff submitted health care grievance Tracking No. SATF HC 19000421. This health care grievance alleges as follows:

Request seen by Med. Dr., & in Confidential Exam Room & no further discrimination of age, gender, race for 2/24/2019 seen N.P., Merrit in Chapel for Fac. B. Clinic Not Accessible, & I over-Heard 5 I/M's Med. Exam's as mine was heard, & 7362 2/10/19 #7280452 RENEWAL EGG CRATE MATTRESS or given Premium Gel Gard Mattress as prior 9/12/2006 CMF, Cannot rest Sleep more than 2 hours Severe PAIN on Body Touch Points Shoulder/Hips/Low & Upper Back from Degenerative Disk Disease. Request not be PARALIZED. Request Dr. as attached DUTY STATEMENT. 2) Request 2/10/10 7362 #7280460 seen by Foot Dr./Podiatrist Replacement PROFER 15EEE ORTHOTICE Boots & Sandals Out-of-Line from Severe PAIN Right Back middle Thigh to Low Back cause Walk slow or may Collapse/Fall 10 to 50ft & keep pressure off Feet I limp or Roll-Foot. 3) 2/11/2019 seen LVN Triage No Badge Insignia CCR 3393I & No Face Scan Temp. Check & No Arm-Thru Non-Manual BP Machine for when ask Name BP Cuff placed tight & for request Clean Pulse Finger Machine LVN's Upset & I'm in anxiety & Pressure Up & RN Rosebum refuse to Exam & stated: To many issues, & therefore 4) 7362 2/13/2019DIZZY & Severe Back Neck PAIN enter & exit Bed & Could Not Talk in Confidentality I/M's/C/O's Psy. Staff listen violate P.C. §626(b); Civil Code 56.23(b), Signed for 3rd Party Intervenor, & Rn called out Rn Holden about Mattress & RN responds as Dr. for No Dr's SATF-II, & violate CCR 3354(a) Scope of licensure; Toussaint v. McCarthy 801 F.2d 111-12 (9th Cir.1980) MTA's I/M's RN's cannot lawfully render services they are not qualified for. It's deliberate indifference. See RN's DUTY STATEMENT. & 6362 2/13/2019request seen Older Male Nurse & Dr. & be moved somewhere 'I have access Toilet like Cells. For I get No PLASTIC BAGGS from I (cannot) control urinating 4 to 7 times at Night & during Day also many times I deficate on myself uncontrobally for distance to Toilet to Far, & Put pants in Bats for Offends & disrespects Other I?M's smell after rising off Feces & Wash Personal Underwear & in Dorm a problem & Request No Tuskegee Test, Blood Draws, X-Rays, or sent CTC in Golf Cart as Level 2 I/M & Not Level 4. 2/24/19 NP, Merrit Only discussed Boots & attempted seak of above & she spoke of BP.

The HCGO accepted the health care grievance and identified four issues, including Plaintiff's request for an egg crate or a gel mattress. On May 20, 2019, the HCGO did not intervene in the health care grievance. On May 27, 2019, Plaintiff appealed, and, on July 9, 2019, the HCCAB issued the Headquarters Level Response, which also did not intervene in the health care grievance.

25. On January 23, 2020, Plaintiff submitted health care grievance Tracking No. SATF HC 20000106. This health care grievance alleges as follows:

COMPLAINT CCR 3999.231 Nurse Practioner Lura Merrit REMOVED permanently working B-Fac., & Not work CTC to assess diagnosis evaluation Appellant & Group Glass, or review med. Records, & seen by Med. Dr. only. Merrit not Med. Dr. 6 yrs Sch & 2 yrs Intern," Not listerning I/P's CCR 39999.146(a)(1) Assessment, (2) Diagnosis, (6) Evaluation. & denys 3999.390(a) DME/Appliances once proscribed & Meds, Orders Test, Blood Draws, Physical Therapy, ect 1/6/2020 & Not spoke to Appellant, Group Glass & many times misdiagnosis, & Not consulting a Physician CCR 3999.133(b) co-management. & subverting Civ. Code § P.C., See CDC 7225 REFUSAL 7/24/19 – 7/29/19, & for 602 SATF-HC-19000421 takes CCR 3999.226(e) Staff shall not take reprisal against the grievant for filing a health care grievance. 2) violates ART-22, A. 2) or an act of retaliation for reporting misconduct., D. 2) Failure to observe & perform with in scope of TRAINING, D. 26) Endangering self, fellow employees, 'Inmates,' or public by violation of Training, Laws, Ordinances, D. 26) HARASSING anyone based upon race, color, national origine, ancestry, sex, (i.e.,Gender). For Merrit keeps Appellant/I/P's in SATF violating CCR 3999.410(b) CST may be medical restricted form Cocci-2 area based on other needs. Valley Fever Merrit has Not had I'P's sign Waiver CCR 3999.411(a)(4)(7) & transferred for most are Black & Merrit reverse discrimination CCR 3004(b). N.P.Merrit SATF/CDCR violates Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed. 412 (1989) SYLLABUS 2.(b) TRAINING as Basis for Liability where Failure to Train amounts to Deliberate Indifference Constitutional Rights of person Whom comes into contact: Farmer v. Brennan, 511 U.S. 825,847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) at 834 & 842. Second, a prison official must have a state of mind of deliberate indifference, to a prisoner's health & safety. REMOVAL of N.P. Merrit. If not let any an all be held accountable for Court's for degradation Title 15, CCR 3391(a); #3999.321, #3004(b)(c), #3999.146(a), #3999.390(a), #3999.133(b), #3999.10(a)Quality Management, #399.111(a) Statewide Patient Safety Program; Plata Quality Assurance; P.C. §§'s 2600, $6102(a),(b), §21a Specific Intent, §147; 1st, 5th, 5th, 8th, 11th, 14th, Amend's. Will seek damages for Liability, Obligation, Exemplary, Detriment, Future Detriment, Emotional Distress, Mental Anguish at individual & official capacities, for CivilCode §545.6 Gov't Tort Liability §4.15, §4.17; ART-22; Toussaint v. McCarthy, 801 F.2d 111-12 (9th Cir.1980) MTA's, I/M's, RN's cannot lawfully render services they are not qualified for its deliberate indifference; Monell v. Dept. Soc. Serv's of N.Y., 436 U.S. 658 (1978) 690-91 Policy of Inaction, result of a Conscious Choice, Canton 1197 made among various Alternatives by officials for Establishing Final Policy with respect to subject matter.

13

Plaintiff attached to this health care grievance, *inter alia*, a July 25, 2019 CDCR 7225 Refusal of Examination and/or Treatment, which bears Plaintiff's signature and states that, on July 23, 2019, Plaintiff told Merritt that she was a Defendant in a lawsuit and "was in reprisal"; and Plaintiff health care grievance, Tracking No. 19000421, and related documents. A CDCR 7225 Refusal of Examination and/or Treatment documents an incarcerated person's refusal of an examination or medical treatment. It does not document a treatment provider's refusal to treat an incarcerated person.

The HCGO accepted this health care grievance and identified Merritt's deliberate indifference as the issue raised. The HCGO did not intervene in the health care grievance. On April 15, 2020, Plaintiff appealed the HCGO's determination. In his appeal, Plaintiff alleged, "N.P. Merrit has sought continued 'Harassment' by scheduling 'Test,' & Not spoken to, & calls in for Interview in Reprisal this 602-HC, SEE attached INMATE PRIORITY PASS 2/13/2020, & 3/26/2020. See 602-HC lines 8,9,10 CCR 3999.26(e) Staff Shall not take reprisal against the grievant for filing a health care grievance; ART-22 A. 2) or an act of retaliation for reporting misconduct." On July 27, 2020, the HCCAB did not intervene in the health care grievance.

26. On August 7, 2022, Plaintiff submitted health care grievance Tracking No. SATF HC 22001107. This health care grievance alleges as follows:

7/25/2022 submitted 7362 to RENEWAL Vitamin Chrono & explained prior given & prior CDC #, & at CMF PATIENT PROFILE 4/10/2007 GLUCOSAMINE/CHONDROTIN, MAGNESIUM & B-COMPLEX 50 MG, OSCAL-D 500 for mitigate Bone Pain or seen ORTHOTIC SURGEON. Also RENEWAL ORTHOIC SANDALS or seen Podiatrist B-Fac., & at bottom "Request No reprisal Blood Test, X-Rays or Harassment." 8/2/2022 at Clinic requested C/O Mello present for Civil action Merrit, & as 'Provider' had to see her, & had C/O 'Read'No reprisal Blood Test, X-Rays or Harassment, & when seen NP Merrit 'I REFUSED any Blood Test, X-Rays, & stated Estell v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285 50 L.Ed.2d (1976) at *8 Once proscribed not denied by Dr. or Guard., & told Merrit N.P., she violated Plata Settlement, at "Sick-call with the clinic 'doctor' & grievance's SATF-H-C-T9000421 & SATF-H-C-20000106. Therefore N.P. Merrit ORDERED X-Rays for Radiology 8/5/2022 in reprisal CCR 3999.226(e). Reques she Not interview, exam, as Provider, & removal B-Fac. Or CTC.

Plaintiff attached to this health care grievance, *inter alia*, a July 25, 2022 health-care request; a July 29, 2022 Inmate Priority Pass for a medical appointment on August 2, 2022; documents filed in the instant action; Plaintiff's August 5, 2022 CDCR 7225 Refusal of Examination and/or Treatment, in which Plaintiff refuses a blood test and x-rays; and multiple health-care grievances, including Tracking No. SATF HC 20000106 and Tracking No. SATF HC 19000421 and related documents. The HCGO accepted this health-care grievance and identified five issues, which include in relevant part: the provider ordered x-rays in reprisal for previous health-care grievances; to have the provider not to give interviews or examinations; and to have the provider removed from the facility. The HCGO did not intervene in the health-care

grievance. On October 25, 2022, Plaintiff appealed, and, on January 6, 2023, the HCCAB did not intervene in the health-care grievance.

27. On August 28, 2022, Plaintiff submitted health care grievance Tracking No. SATF HC 22001215.

28. On January 25, 2023, Plaintiff submitted health care grievance Tracking No. SATF HC 23000107.

29. In both SATF HC 22001215 and 23000107, Plaintiff requested, in relevant parts, not to see Merritt because of his litigation and complaints against her.

30. Neither SATF HC 22001215 or 23000107 allege that Correa refused "to address Plaintiff's incontinence and need for an egg crate mattress" or that Merritt "refused to treat Plaintiff because he filed health care grievances complaining about Merritt's lack of cleanliness and other deficiencies.

**Plaintiff's Other Health Care Grievances**

31. Between January 28, 2019 and April 21, 2023, Plaintiff also submitted the following healthcare grievances: Tracking No. SATF HC 23000398, Tracking No. SATF HC 23000322, Tracking No. SATF HC 23000246, Tracking No. SATF HC 20001299, Tracking No. SATF HC 19000995 (which was addressed as a staff complaint, Tracking No. SATF SC 19000052), and Tracking No. SATF HC 19000916 (which was addressed as a staff complaint, Tracking No. SATF SC 19000035).

32. None of these health care grievances alleges that Correa refused "to address Plaintiff's incontinence and need for an egg crate mattress" or that Merritt "refused to treat Plaintiff because he filed health care grievances complaining about Merritt's lack of cleanliness and other deficiencies."

**Plaintiff's Non-Health Care Grievances**

33. Plaintiff submitted thirty-three non-health care grievances between January 28, 2019 and April 21, 2023.

34. None of these grievances allege that Correa refused "to address Plaintiff's incontinence and need for an egg crate mattress" or that Merritt "refused to treat

15

Plaintiff because he filed health care grievances complaining about Merritt's lack of cleanliness and other deficiencies."

(Doc. 90 at 9-15 [hereafter "UDF" followed by the appropriate number].)

### VI.    PLAINTIFF'S RESPONSE TO DEFENDANTS' UNDISPUTED FACTS

Plaintiff's opposition to Defendants' UDFs appears at pages 25 through 38 of his June 9, 2025, filing. (*See* Doc. 94 at 25-38.) Without explanation, Plaintiff uses the term "Exception" instead of "Admit" as instructed by the Local Rules. *See* Local Rule 260(b) ("Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts *and admit those facts that are undisputed* and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial" [emphasis added]). Presuming Plaintiff intended to *admit* certain statements identified by Defendants as undisputed, following review, the Court determines that Plaintiff admits the following UDFs: 1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 32, 33 and 34. As to others, Plaintiff appears to deny certain UDFs, *at least in part*. Therefore, in this instance, following review, the Court finds Plaintiff purports to deny the following UDFs: 6, 8, 16, 23, 24, 25, 26, 27, 28, 29, 30 and 31.

The Court notes that at pages 7 through 12 of his opposition (*see* Doc. 94), in a separate but simultaneously filed document titled "Plaintiff's Motion in Opposition Defendants Correa and Merrit's Motion for Partial Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies," but bearing the heading "Statement of Genuine Issues," it appears Plaintiff intended to submit a separate statement of disputed facts. *See* Local Rule 260(b) ("The opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication"). On the last page, Plaintiff states "the above is true and correct and above is ('Same') Similar First Amended [Complaint], at IV. <u>Factual Allegations</u> pages 3 through 10." (*See* Doc. 94 at 12.) Following review of this document as compared to the information provided above — *see* IV. Plaintiff's Operative Complaint, *ante* — the undersigned

16

elects not to repeat the information for the sake of judicial efficiency. Suffice to say, Plaintiff relies on the factual allegations asserted in his first amended complaint.

**VII.   DISCUSSION**

This Court must determine whether Plaintiff exhausted his administrative remedies regarding his Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Correa and First Amendment retaliation claim against Defendant Merritt.[2] To be clear, the merits of Plaintiff's claims are not addressed. Defendants Correa and Merritt's partial summary judgment motion concerns the exhaustion of administrative remedies only. *See, e.g.*, *Williams v. Thompson*, No. 1:19-cv-00330-AWI-CDB (PC), 2023 WL 2823388 at *1 (E.D. Cal. Apr. 7, 2023) ("at this stage of the proceedings, defendants' motion for summary judgment is based on non-exhaustion of remedies and does not address the merits of his constitutional claims").

#### *Whether Plaintiff Exhausted His Deliberate Indifference Claim Against Correa*

There is no dispute that an administrative grievance process was available at SATF during the relevant period. UDF 10-19. In dispute is whether Plaintiff failed to exhaust his administrative remedies concerning his claim against Defendant Correa because Correa is not identified in SATF HC 19000421.

In the operative complaint, Plaintiff alleged Defendant Correa refused to examine him, stating he had too many issues on February 11, 2019, and that Correa "deferred to RN Huffman as Dr. 2/11/19 for Egg Create [sic] Mattress." A review of Section A of SATF HC 19000421 — the grievance all parties agree is determinative of the issue — reveals that Plaintiff does not identify Defendant Correa (or Fishburn) as the individual who saw Plaintiff on that date. Rather, the grievance refers to an unnamed "LVN" and "RN Rosebum" as having seen Plaintiff on February 11, 2019. (*See* Doc. 90-2 at 22, 24.) Neither "Correa" nor "Fishburn" are referenced in

---

[2] In arriving at its determination, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

that section of the grievance involving medical appointments on several dates: February 10, February 11, February 13, and February 24 of 2019. (*Id*.) Rather, "RN Rosebum" is identified as the individual who refused to examine Plaintiff. (*Id*. at 22.) Nevertheless, in Section C of SATF HC 19000421, wherein an inmate "dissatisfied with the Institutional Level Grievance Response" is prompted to "explain the reason" for his or her dissatisfaction, Plaintiff does reference "Fishburn" twice.[3] (*See* Doc. 90-2 at 23 ["RN, Fishburn, LVN, Huffman, & all Med/Psy. Staff wear No Badeg [sic] Insignia for No Identification when as explained Defecating Myself & Urinating on self 7 or more times more Bladder problems" and "RN, Fishburn REFUSED Exam, & 'I Still suffer'"].)

In arguing he did exhaust his claims against Defendant Correa, Plaintiff states: "Defendant RN Rosebum/=Fishburn/Married-Correa, is listed" on SATF HC 19000421. (*See* Doc. 94 at 17.) Referring to a lack of "Badge Insignia," Plaintiff maintains SATF HC 19000421 referenced "RN Rosebum/=Fishburn—married now—Correa refused" to examine him and advised he had too many issues on February 10, 2019. (*Id.* at 18.) In their reply to Plaintiff's opposition, Defendants assert "Plaintiff then changes, for the first time, the identity of the person identified in this grievance" and that "Plaintiff provides no further evidence to support this contention that another person was involved beyond this statement." (*See* Doc. 99 at 2-3.) The undersigned is not persuaded that Plaintiff "change[d] … the identity of the person identified" in SATF HC 19000421 or that Plaintiff was contending "another person was involved." Rather, the undersigned understands Plaintiff's argument to be that "Rosebum," Fishburn and Correa are one and the same individual.[4]

Notably, the primary purpose of grievance is to alert prison officials to a problem and facilitate its resolution, not to provide personal notice to a particular official that he may be sued. *See Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016). While Plaintiff's grievance arguably is

---

[3] Section B pertains to explaining one's dissatisfaction with the "Health Care Grievance Response;" in this section, Plaintiff did not identify Defendant Correa or "Fishburn." (*See* Doc. 90-2 at 24.)

[4] There is no evidence proffered by Defendants to indicate "Rosebum" is not Defendant Correa (or Fishburn) or that any reference to "Rosebum" refers to another registered nurse who treated Plaintiff during the relevant period.

difficult to decipher and/or read easily, Plaintiff's various complaints concerning the medical care he received and/or did not receive during the relevant period, alongside Plaintiff's efforts to specifically identify which staff person or persons was responsible for that care or lack of care, are sufficient to alert SATF officials to his alleged problems and allow for possible resolution.

The undersigned acknowledges Defendants' argument that *Reyes* does not apply here because the grievance did not "'plainly' … notify SATF of Plaintiff's deliberate-indifference claim against Correa," but is not persuaded for the reasons discussed above. Notably too, a surname starting with an "R" may be mistaken for a surname beginning with an "F." Further, a surname ending in "bum" could easily be mistaken with a surname ending in "burn." Plaintiff attempted to comply with regulations by identifying the involved staff member on the relevant date and by describing the actions taken or not taken by that individual; misspelling or mis-rendering an involved individual's name where the prison could otherwise identify the correct individual based upon medical treatment given and description of events on a particular date does not fail to alert the prison to an alleged wrongdoing. *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation"); *see*, *e.g.*, *Cotton v. Medina*, No. 1:22-cv-00568-JLT-EPG (PC), 2024 WL 1313045, at *8 (E.D. Cal. Mar. 26, 2024) (finding reference to "the Sergeant" in a grievance "contained enough factual specificity to put the prison on notice as to the nature of the wrong for which Plaintiff now seeks redress in this Court"), adopted in full, 2024 WL 1932802 (E.D. Cal.  May 2, 2024); *Williams v. Romero*, No. 2:17-cv-1884 TLN DB P, 2023 WL 4551436, at *10-11 (E.D. Cal. July 14, 2023) (finding "plaintiff's references to Abarca's phone calls for medical help and statement that Abarca had 'in fact' made those calls to be sufficient to have placed the prison on notice that someone in the medical unit may be involved in plaintiff's claimed failures to provide medical care. Defendant has not demonstrated that it is an indisputable fact that plaintiff failed to exhaust his remedies against Chuksorji"), adopted in full, 2023 WL 5723746 (E.D. Cal. Sept. 5, 2023); *Ardds v. Hicks*, No. 1:18-cv-01324-JLT-BAM, 2022 WL 507427, at *12 (E.D. Cal. Feb. 18, 2022) ("the Court finds that the undisputed evidence viewed in the light most favorable to Plaintiff shows that Plaintiff exhausted

his administrative remedies as to his failure to protect claim against any Defendants who may have been members of the ICC and IDTT committees" at the relevant time, notwithstanding Plaintiff did not name in his grievance any such ICC/IDTT committee member), adopted in full, 2022 WL 951173 (E.D. Cal. Mar. 30, 2022).

In sum, and viewed in the light most favorable to Plaintiff, the relevant documentation, coupled with Plaintiff's explanation that "Rosebum," Fishburn, and Correa are one and the same individual, the undersigned finds Defendants are not entitled to summary judgment concerning Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Correa. *See Albino*, 747 F.3d at 1166 (summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust); *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (admonishing district courts to "construe liberally motion papers and pleadings filed by pro se inmates and ... avoid applying summary judgment rules strictly").

### *Whether Plaintiff Exhausted His Retaliation Claim Against Merritt*

Again, there is no dispute that an administrative grievance process was available at SATF during the relevant period. UDF 10-19. In dispute is whether Plaintiff failed to exhaust his administrative remedies concerning his First Amendment retaliation claim against Defendant Merritt.

The Court considered the following grievances: SATF HC 20000106, SATF HC 22001107, SATF HC 22001215, and SATF HC 23000107.[5]

#### SATF HC 20000106

Defendants contend this grievance "could not have notified SATF of Plaintiff's claim that Merritt refused to treat Plaintiff in retaliation for a previous grievance," noting it does not allege any refusal to treat by Merritt but instead seeks Merritt's removal "from Plaintiff's facility based on the quality of care Merritt provided." (Doc. 90 at 21.) Further, Defendants argue Plaintiff's

---

[5] The undersigned reviewed the remaining grievances submitted during the relevant period — including SATF SC 19000035, SATF SC 19000052, SATF HC 19000916, SATF HC 19000995, SATF HC 20001299, SATF HC 23000246, SATF HC 23000322, SATF HC 23000398 & SATF HC 23000636, — however none concern the claims at issue in Defendants' partial summary judgment motion. (*See* Doc. 90-2 at 189-368.)

reference to a "'REFUSAL'" in the relevant grievance instead "refers to Plaintiff's refusal of medical treatment, his previous health-care grievance, and the prohibition of retaliation—none of which could have notified SATF of Plaintiff's claim of Merritt's retaliatory treatment refusal." (*Id*. at 21-22 [fns. omitted].) Moreover, Defendants argue that even if Plaintiff's attempt "to assert the retaliation claim found cognizable by the Court" in this grievance is accepted by the Court, Plaintiff "failed to do so properly." (*Id*. at 22.) They argue Plaintiff did "not 'clearly and coherently'" (quoting Cal. Code Regs. tit. 15, § 3999.227(g)) set forth his claim because its factual basis is "interspersed incoherently between regulatory and record citations, general propositions, and lengthy legal argument," meaning Plaintiff "failed to follow the rules requiring that he include specific, coherent information" in the grievance, amounting to Plaintiff's failure to properly exhaust his retaliation claim against Merritt. (*Id*.)

In his opposition, Plaintiff argues SATF HC 20000106 exhausted his retaliation claim against Defendant Merritt because Plaintiff had filed a prior grievance against Merritt (SATF HC 19000421), that she was refusing to treat or address his foot complaints ("claim Façade to Feet"),[6] that when Plaintiff next saw Merritt he asked a correctional officer ("Correctional Officer (C/O) Rutledge") to be present to prevent further retaliation, that Plaintiff expressed his medical issues and related concerns to Merritt ("plaintiff spoke of Med. Issues, & No Confidential Exams") before leaving, and that the correctional officer then advised Plaintiff that Merritt considered their interaction to be a refusal to be treated by Plaintiff ("C/O Rutledge came outside & states: NP Merritt claim REFUSAL"). (Doc. 94 at 20.) Plaintiff further argues that his reference to the *Rhodes* and *Brodheim* cases[7] served to exhaust his retaliation claim against Merritt (*id*. at 20-21) and that the headquarters level response indicated his administrative remedies had been exhausted (*id*. at 21). He maintains Section C of the grievance referred to Merritt's "continued 'Harassment' by scheduling 'Test,' & Not spoken to, & calls in for Interview …" (*Id*. at 22.)

Defendants contend this grievance did not exhaust Plaintiff's retaliation claim against

---

[6] In the operative complaint, Plaintiff alleged he saw Merritt on February 24, 2019, and they discussed only his foot issues, but not the other issues he raised in his health care requests.

[7] *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005); *Brodheim* v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Merritt "because California Correctional Health Care Services staff identified only a deliberate [indifference] complaint" and Plaintiff did not specifically describe his complaint against Merritt, but instead requested "Merritt's removal from Plaintiff's housing unit and generally complains about quality of care provided by Merritt," making it insufficient to exhaust Plaintiff's administrative remedies "concerning a non-descript retaliation claim in a blizzard of claims concerning a medical encounter." (Doc. 99 at 3-4.)

In Section A of SATF HC 20000106 (Doc. 90-2 at 115-118)., and relevant to Plaintiff's retaliation claim, Plaintiff asks that Defendant Merritt be removed "permanently" from Facility B and "Not work CTC to assess diagnosis evaluation … or review med. records" and that he been "seen by Med. Dr. only" because Merritt does not listen to inmate concerns, denies "DME/appliances once proscribed & Meds, & Orders Test, Blood Draws, Physical therapy … & Not spoke to [Plaintiff]" and other inmates or "consulting [with] a Physician," and that essentially Merritt retaliated against him for submitting a prior grievance ("See 7225 REFUSAL 7/24/19 – 7/29/19, & for 602 SATF-HC-19000421 takes CCR 3999.226(e) Staff shall not take reprisal against the grievant for filing a health care grievance"). (Doc. 90-2 at 115.)

In Section C, explaining his dissatisfaction with the institutional level response, Plaintiff wrote, in relevant part, that a "Nurse [Practitioner] is 'Not a doctor" and requested Merritt be removed. (Doc. 90-2 at 116-117.) He stated Merritt has "sought continued 'Harassment' by scheduling 'Test,' & Not spoken to, & calls in for Interview in reprisal this 602-HC …. CCR 3999.26(e) Staff Shall not take reprisal against the grievance for filing a health care grievance," and citing to *Rhodes* and *Brodheim*. (*Id*. at 118.)

In the institutional level response, this issue in Plaintiff's grievance is identified as "Disagreement with Treatment (Primary Care Provider) … For Nurse Practitioner Laura Merritt to be removed due to deliberate indifference." (Doc. 90-2 at 119.) The headquarters level response identifies this grievance issue as "Staff Complaints (Deliberate Indifference) … Remove primary care provider." (Doc. 90-2 at 121.)

Following a thorough review, the undersigned concludes SATF HC 20000106 gave the prison adequate notice of Plaintiff's First Amendment retaliation claim. Although Plaintiff's

22

efforts may have been inartful, and despite whatever interpretation those efforts were assigned by the institution, a fair reading of the grievance's content makes plain Plaintiff was alleging Defendant Merritt's conduct (not listening to Plaintiff's concerns or requests, then concluding Plaintiff was refusing medical treatment on the whole and scheduling testing not sought without consultation) following his earlier grievance (SATF HC 19000421) was retaliatory and thus served to alert prison authorities of the nature of the alleged wrong. *See Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (reiterating that a grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought") (quoting *Griffin*, 557 F.3d at 1120); *see also Ardds*, 2022 WL 507427, at *12; *Gonzalez v. Razo*, No. 1:15-cv-01098-DAD-EPG, 2017 WL 6507245, at *2 (E.D. Cal. Dec. 20, 2017) (finding that plaintiff's grievance request for unnamed staff to be counseled on "retaliation" sufficiently exhausted his retaliation claim and noting that a PLRA plaintiff is not obligated to identify "the particular legal theory he intends to pursue").

The Court recognizes that reference to a CDCR 7362 concerns Plaintiff's refusal of medical treatment as pointed out by Defendants. However, in context, the Court understands Plaintiff's grievance to assert that he first sought treatment from Defendant Merritt as outlined in his related request for medical care before refusing the specific treatment suggested by Merritt during the visit that Plaintiff contends is unrelated to his specific requests. At bottom, the fact a CDCR 7362 form was completed following the encounter between Plaintiff and Merritt does not, on this record, require a finding of a failure to exhaust.

In sum, viewed in the light most favorable to Plaintiff, the undersigned concludes SATF HC 20000106 exhausted Plaintiff's administrative remedies concerning his First Amendment retaliation claim against Defendant Merritt, thus precluding relief.

### SATF HC 22001107

Defendants contend SATF HC 22001107 is also insufficient to exhaust Plaintiff's administrative remedies concerning his retaliation claim against Merritt. (Doc. 90 at 23.) Specifically, Defendants assert Plaintiff "did not allege in his appeal that Merritt retaliated against Plaintiff by refusing to treat him" and that he "did not properly exhaust his retaliation claim by asserting it in his appeal." (*Id.*)

23

Plaintiff argues SATF HC 22001107, concerning renewal of a "Vitamin Chrono and [ORTHOPEDIC] SANDALS," exhausted his administrative remedies concerning his retaliation claim against Defendant Merritt because during an August 2, 2022, visit with Merritt, whom he "had to see," he asked a correctional officer ("C/O Mello") to be present and "had C/O 'Read' No reprisal Blood Test, X-Rays or Harassment, bottom of Health Request." (Doc. 94 at 22.) Plaintiff states that when he saw Merritt, he "REFUSED any Blood Test, X-Rays, & stated [Estelle v. Gamble] … & told Merritt she violated Plata … & she was in reprisal to prior Grievance." (*Id*. at 22-23.)

In their reply, Defendants contend "that grievance concerned other activity that is not the subject of this litigation" — that despite Plaintiff's claim that SATF HC 22001107 involves his assertion that "Merritt retaliated against Plaintiff by refusing to treat Plaintiff's particular medical needs," the grievance demonstrates that Plaintiff claimed "that Merritt retaliated against Plaintiff by ordering a blood test and x-rays despite Plaintiff's refusal of those tests, and that Merritt ordered those tests as retaliation for Plaintiff's previous grievances." (Doc. 99 at 4.) They maintain that was "demonstrated by health care grievance staffs' identification of a retaliation claim concerning Merritt's ordering x-rays" and thus SATF was not on notice "that Plaintiff asserted Merritt's retaliatory treatment refusal," making that claim unexhausted. (*Id*.) Defendants further assert that "Plaintiff acknowledges" their argument that SATF HC 22001107 involved "Merritt ordering blood tests and x-rays, and that the Court conducted screening of the First Amended Complaint in which Plaintiff raised this claim" and that Plaintiff "'contends he met Exhaustion his retaliation Claim [sic], or moot Issue pursuant Court's order,'" stating "it appears that Plaintiff accepts that this grievance did not address the cognizable retaliation claim against Merritt. (*Id*. at 4-5.)

In Section A of the relevant grievance, Plaintiff states that on July 25, 2022, he submitted a form 7362 to renew a "Vitamin Chrono" to "mitigate Bone Pain" or obtain a referral to an "ORTHOTIC SURGEON," and sought to renew "ORTHOIC SANDALS" or obtain a referral to a podiatrist. (*See* Doc. 90-2 at 82.) At the bottom of the form, Plaintiff wrote: "'Request No reprisal Blood Test, X-Rays or Harassment,'" and that on August 2, 2022, at the clinic, he

24

"requested C/O Mello [be] present for Civil action on Merrit, & as 'Provider' had to see her, & had C/O 'Read' No reprisal Blood Test, X-Rays or Harassment." (*Id.*) Plaintiff indicated that when he saw Defendant Merritt, he refused "any Blood Test, X-Rays" told her that "she violated Plata Settlement … & she was in reprisal to prior Grievance & why INJUNCTION against her," referencing SATF HC 19000421 and SATF HC 20000106. Plaintiff alleges Merritt retaliated by ordering x-rays. (*Id.*) He requested Merritt not be permitted to interview or examine him as a medical provider and that she be removed from "B-Fac or CTC." (*Id.*)

In Section C of SATF HC 22001107, concerning his dissatisfaction with the institutional level response, Plaintiff indicated, in part, that his "STAFF COMPLAINT was for N.P. Merrit "Ordered 'Test' in reprisal prior grievances & current Court actions"" (Doc. 90-2 at 83), asserted that despite his complaint concerning footwear and his need to be closer to a toilet to avoid urinating and defecating on himself, Merritt "denys & uses retaliation Test, Blood Test, X-Rays for herein prior grievances and Group Class," and alleging that after Merritt was "exposed" for providing inadequate medical treatment, she retaliates against him by using "any 7362" he submits "to seek reprisal." (*Id.* at 85.)

In the institutional level response, in relevant part, an "Issue" identified in Plaintiff's grievances is "Disagreement with Treatment (Primary Care Provider) … Alleges provider placed orders for x-ray in reprisal of previous health care grievances" and "Staff Complaints (Reprimand Request) … To have provider staff removed from Facility B." (Doc. 90-2 at 86.)

The headquarters level response, in relevant part, identifies an "Issue" in Plaintiff's grievance as alleging "that Nurse Practitioner Merrit, violated Plata settlement at sick call with the clinic doctor and was in reprisal to prior grievances. On August 5, 2022, NP Merrit ordered x-rays for radiology in reprisal. To have provider staff removed from Facility-B." (Doc. 90-2 at 79.)

Viewing the evidence in the light most favorable to Plaintiff, the undersigned concludes Plaintiff has exhausted his administrative remedies. Read liberally, as the Court is required to do, Plaintiff's grievance can be understood to assert that despite his requests for specific treatment, including vitamins and orthotics and a need to be closer to the bathroom, Merritt refused to treat him on that date because he previously filed grievances against her. Defendants read the

25

grievance too narrowly, particularly where the content of the grievance is unartfully stated. The undersigned finds that a fair reading of a difficult-to-decipher grievance reveals Plaintiff exhausted his administrative remedies concerning his retaliation claim against Merritt in SATF HC 22001107. Further, the Court rejects Defendants' interpretation of Plaintiff's statements in opposition — that "it appears that Plaintiff accepts that this grievance did not address the cognizable retaliation claim against Merritt." Notably, the heading in Plaintiff's opposition involving Plaintiff's relevant argument reads: "Plaintiff Did Exhaust His Retaliation Claim against [Merritt] in Tracking No. SATF-HC-22001107 and in SECOND AMENDED COMPLAINT." (*See* Doc. 94 at 22.) Plaintiff references language used in the grievance (*id*. at 22), language used in the institutional and headquarter responses (*id.* at 22-23) and then references the filing of his second amended complaint, Defendants' request that it be screened, and a part of the Court's conclusion and order after screening (*id*. at 23). Regardless of the point Plaintiff sought to make, he concluded his argument concerning SATF HC 22001107 with the following: "Therefore plaintiff Contends he met Exhaustion his retaliation [Claim], or moot Issue Pursuant to Court's Order."

In sum, viewed in the light most favorable to Plaintiff, the undersigned finds SATF HC 22001107 exhausts Plaintiff's retaliation claim against Defendant Merritt involving a failure to provide medical treatment. *See Albino*, 747 F.3d at 1166; *Thomas*, 611 F.3d at 1150.

SATF HC 22001215 & SATF HC 23000107

Defendants contend these grievances involve Plaintiff's requests "not to see Merritt because of Plaintiff's litigation against Merritt," but that neither asserts "that Merritt retaliated against Plaintiff by refusing to treat Plaintiff." (Doc. 90 at 24.)

In his opposition, Plaintiff cites to language referring to "RN C. Stronic" and related medical complaints made to Stronic ("Request Cough Drops & [Antibiotics]. Sore Throat Right Ear Hearing Loss Night Sweats ...."), and his "Request 'Not' seen by N.P. Merritt" (*id*.). Plaintiff contends the grievance language involves "Conspiracy P.C. 182(a)(5), & CEO [condones] this on-going Targeting," (*id*. at 23-24), before stating: "Plaintiff shows exhaustion of remedy and ('Immaterial') for these two grievance(s) 'Not' in First Amended Complaint or in Second

26

Amended Complaint" (*id*. at 24).

In reply, Defendants contend that "[a]s with previous grievances, SATF HC 22001215 did not complain about Merritt's alleged retaliation against Plaintiff by refusing to treat him or address his incontinence or need for an egg crate mattress," thus Plaintiff failed to exhaust the "operative retaliation claim" in this grievance. (Doc. 99 at 5.) Further, Defendant contend that in the opposition, "Plaintiff appears to acknowledge that …. SATF HC 22001215 is 'immaterial,' not in Plaintiff's complaints, and concerns other issues." (*Id*.)

In Section A of the SATF HC 22001215 grievance, Plaintiff wrote, in relevant part: "I ask not been seen by N.P. Merrit for Court civil action." (Doc. 90-2 at 137, 139 [duplicate], 143.) In Section C concerning his dissatisfaction with the institutional level response, Plaintiff wrote exclusively concerning his complaints about non-defendant Nurse Stronic; no mention is made of Defendant Merritt. (*Id*. at 138, 141-142.)

In the institutional level response for SATF HC 22001215, the issues identified involve: "To [not] be made to be examined by nursing staff," to be seen by provider for blurred vision, to be removed from GED classes, that "nursing staff [are] taking blood pressure inappropriately," and "Staff Complaints (Deliberate Indifference) … [t]o your medical needs." (Doc. 90-2 at 145.) The headquarters level response, in relevant part, identifies an "Issue" in Plaintiff's grievance as "Disagreement with Treatment (Change Provider) … To not be examined by Registered Nurse (RN) C. Stronic or seen by Nurse Practitioner Merritt." (*See* Doc. 90-2 at 134.)

In Section A of SATF HC 23000107, Plaintiff wrote, in relevant part: "Request 'Not' seen by N.P., L.Merrit for U.S.E.D., Court action & recent COMPLAINT …" (Doc. 90-2 at 180.) In Section C concerning his dissatisfaction with the institutional level response, Plaintiff wrote, in part, "Also in WILSON v. L.MERRIT, Nurse Practitioner U.S.E.D., No. 1:22-cv-00455-BAK (GSA) (PC), page 14, 16) ORDERED STAF diversified shall include Other races and African Americans born U.S."[8] (*Id*. at 181.)

---

[8] Between April 19, 2022, and May 4, 2022, this action was assigned to Magistrate Judge Gary S. Austin and bore the case number "1:22-cv-00455-BAK (GSA) (PC)." (*See* Docs. 7 & 13.) During that period, Judge Austin issued a single order on April 26, 2022, directing Plaintiff to submit an application to proceed in forma pauperis. (Doc. 9.) The Court is unable to identify any order issued in this action matching the description in Plaintiff's grievance.

In the institutional level response for SATF HC 23000107, the issues identified involve: "Scheduling (PCP Encounter) … To be seen by provider regarding sore throat, cough, hearing loss, and night sweats," "Disagreement with Treatment (Nursing Staff) … Alleges nursing staff inappropriately performed blood pressure check," "Disagreement with Treatment (Change Provider) … To have vitals taken by another nurse," and "Administrative (Policy & Procedure) … Alleges targeting and violation of Department Operations Manual (DOM)." (Doc. 90-2 at 182.) The headquarters level response, in relevant part, identifies an "Issue" in Plaintiff's grievance as "Disagreement with Treatment (Nursing Staff) … Alleges nursing staff inappropriately performed blood pressure check." (*See id*. at 177.) Another issue was "Disagreement with Treatment (Change Provider) … To have vitals taken by another nurse." (*Id*.)

The undersigned concludes that SATF HC 22001215 and SATF HC 23000107 do not serve to exhaust Plaintiff's retaliation claim against Merritt for her purported refusal to address his medical needs because he filed an earlier grievance against Merritt. Both grievances seek to avoid having to be seen by Defendant Merritt and make passing reference to prior grievances and a complaint in the absence of specific factual assertions concerning the cognizable retaliation claim against Defendant Merritt. Plaintiff does appear to partially acknowledge that SATF HC 22001215 and 23000107 do not serve to exhaust his administrative remedies against Defendant Merritt. This is so because although Plaintiff's argument heading states that he did exhaust his claim against Merritt in these grievances (*see* Doc. 94 at 23), his final statement can be understood to acknowledge his operative complaint did not reference these specific grievances (*id*. at 24). In any event, the Court finds neither SATF HC 22001215 nor SATF HC 23000107 exhaust Plaintiff's administrative remedies against Defendant Merritt – Plaintiff's request not to be treated by Defendant Merritt moving forward does not address any failure to treat by Merritt.

OTHER GRIEVANCES

Defendants contend Plaintiff did not exhaust his retaliation claim against Defendant Merritt for a refusal to provide treatment in any other health care or non-health care grievance. (Doc. 90 at 24.)

Plaintiff argues that between "March 21, 2020 and July 7, 2020" he submitted one health

28

care grievance and one staff complaint against Defendant Merritt, described in his first amended complaint, and "an additional" grievance "for denial of once [prescribed] not denied by Dr. or Guard, and told Nurse Practitioner Merritt she violated Plata SETTLEMENT 'Sick-call with the clinic 'doctor' and she was in reprisal …," addressed in the second amended complaint. (Doc. 94 at 24.)

In reply, Defendants contend Plaintiff did not exhaust "his refusal-to-treat retaliation claim" in any other grievance, "including six health care grievances and thirty-three non-health care grievances filed between January 28, 2019 and April 21, 2023." (Doc. 99 at 5.) They maintain Plaintiff "does not specifically identify the grievances or cite to evidence supporting this contention," stating his vague and "self-serving contentions cannot overcome" their evidence to the contrary. (*Id*.)

The Court has reviewed the parties' submissions as concern other grievances filed by Plaintiff during the relevant period.[9] Defendants' evidence supports their assertion that both the health care grievances and non-health care grievances submitted by Plaintiff between January 2019 and April 2023 do not pertain to Plaintiff's claim against Defendant Merritt. (*See* Docs. 90-1 & 90-2 at 188-368 [Exhs. G-N].)

**VIII.    CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court **HEREBY RECOMMENDS** that:

1. Defendants Correa and Merritt's motion for partial summary judgment be **DENIED in PART** and **GRANTED in PART** as follows:

    a. Defendants' partial summary judgment motion as concerns Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Correa be **DENIED**;

    b. Defendants' partial summary judgment motion as concerns Plaintiff's First Amendment retaliation claims against Defendant Merritt be **DENIED in PART** and **GRANTED in part**:

---

[9] *See* fn. 5, *ante.*

29

               i.   **DENIED** to the extent SATF HC 2000106 and SATF HC 22001107 exhausted Plaintiff's retaliation claim against Defendant Merritt;

            ii.   **GRANTED** to the extent neither SATF HC 220001215 nor SATF HC 23000107, nor any other grievance filed during the relevant period, exhausted Plaintiff's retaliation claims against Defendant Merritt.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **January 23, 2026**                                     
UNITED STATES MAGISTRATE JUDGE